301 So.2d 600 (1974)
STATE of Louisiana
v.
Jimmy T. SLAYTON et al.
No. 54591.
Supreme Court of Louisiana.
October 11, 1974.
Rehearing Denied November 6, 1974.
*601 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., for plaintiff-appellant.
Roland V. McKneely, Jr., Robinson & McKneely, Bossier City, for defendants-appellees.
MARCUS, Justice.
Defendants Jimmy T. Slayton, Richard Dwayne Wilder and Jerome Franklin were charged by bill of information with violation of R.S. 40:968 in that they knowingly and intentionally distributed methamphetamine, a drug listed as a controlled dangerous substance in Schedule IIIA(2) of R.S. 40:964. Defendant Slayton filed a motion to quash the bill of information, alleging that Schedule IIIA(2) of R.S. 40:964 is unconstitutionally vague and overly broad. The trial judge granted the motion, declared Schedule IIIA(2) of R.S. 40:964 unconstitutional and dismissed the prosecution as to defendant Slayton. Thereupon, the State objected to the ruling of the court and reserved Bill of Exceptions No. 1. Defendants Wilder and Franklin each entered a guilty plea to the charge set forth in the information. Thereafter, defendant Wilder filed a motion in arrest of judgment on the ground that the trial judge had previously declared the statute under which he had entered a guilty plea unconstitutional. When the matter was taken up for argument, the State moved for permission to present evidence on this issue. When the trial judge denied the motion, the State reserved Bill of Exceptions No. 2. Thereafter, the court sustained the motion in arrest of judgment, to which ruling the State reserved Bill of Exceptions No. 3.
The State has appealed to this Court, relying on Bills of Exceptions Nos. 1 and 3 (pertaining to the constitutional issue) and, in the alternative, Bill of Exceptions No. 2 (pertaining to the trial judge's denial of the State's motion to introduce evidence) to obtain reversal of the trial court's rulings.
Schedule IIIA(2) of R.S. 40:964 provides:
"A. Stimulants. Unless specifically excepted or unless listed in another Schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a *602 stimulant effect on the central nervous system: (Emphasis added)
* * * * * *
"(2) Any substance (except an injectable liquid) which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."
During the hearing on the motion to quash, defendant's expert chemist testified that there are numerous isomers of methamphetamine and that some of these isomers are included in the manufacture of certain commercial compounds sold without prescription. Apparently based upon this testimony, the trial court concluded that the phrase "including its ... isomers," as used in the above statute, is vague, indefinite and overly broad because some isomers of methamphetamine are included in "over the counter" preparations. However, Mr. Cooper, a chemist from the United States Department of Justice, Drug Enforcement Administration Laboratory, testified at the hearing that the only isomers of methamphetamine of forensic concern are the "D" and "L" isomers. He testified that these are the only two methamphetamine isomers which are potent (or "optically" active) and which have a stimulant effect upon the central nervous system. All other methamphetamine isomers are inactive and have no effect upon the central nervous system. Mr. Cooper testified that the statute concerns only the "D" and "L" isomers, and it is only these isomers which are reported by chemists with experience in the field of controlled dangerous substances.
On appeal, the State contends (Bills of Exceptions Nos. 1 and 3) that the trial judge erred in granting defendant Slayton's motion to quash and sustaining defendant Wilder's motion in arrest of judgment and declaring Schedule IIIA(2) of R.S. 40:964 unconstitutional. The State asserts that the language contained in Schedule IIIA(2) of R.S. 40:964, when read in pari materia with other sections of the Uniform Controlled Dangerous Substances Law, is clear, unambiguous, and is not overly broad.
On the other hand, defendant Slayton contends that, because Schedule IIIA(2) of R.S. 40:964 does not restrict the class of isomers of methamphetamine to only optical isomers, the classification is too broad and is so vague as not to put him on notice as to the nature of the conduct made criminal by the section.
To be constitutionally valid, a penal statute must give a person of ordinary intelligence fair notice that his conduct is criminal. La.Const. Art. 1, § 10; City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974); State v. Dardar, 257 La. 191, 241 So.2d 905 (1970); State v. Billiot, 254 La. 988, 229 So.2d 72 (1969). In City of Baton Rouge v. Norman, supra, we stated the test to be applied in this regard as follows:
"Generally the objection that a statute is vague and overbroad may be satisfied by language which provides an adequate warning as to what conduct is proscribed and which marks boundaries sufficiently distinct for judges and juries to administer the law in accordance with the legislative will. [Citation omitted]
"The requirement of definiteness need only give a person of ordinary intelligence fair notice that his conduct is criminal. To accomplish this the legislature may employ generic terms. Cumbersome enumeration or explicit delineation of all possible situations is not required. `The enumeration in a statute of every item or variation in conduct is frequently impossible.'" [Citations omitted]
We are aided in applying the above test to the facts of the present case by R.S. 14:3, pertaining to the proper interpretation to be given penal statutes. That section provides:
"The articles of this Code cannot be extended by analogy so as to create crimes *603 not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." (Emphasis added)
In considering the Uniform Controlled Dangerous Substances Law as a whole, as we are obliged to do by R.S. 14:3, we conclude that the trial judge's rulings are erroneous and that Schedule IIIA(2) of R.S. 40:964 is not unconstitutionally vague and overly broad.
R.S. 40:962, subd. A states that "all controlled dangerous substances listed in R.S. 40:964 are hereby controlled." It further authorizes the State Board of Health to add substances to the list depending upon a substance's "potential for abuse" and sets forth the criteria for making such a determination. R.S. 40:963 provides further guidance to the State Board of Health in adding another substance to the schedules listed in R.S. 40:964. Again, the emphasis is placed upon the substance's "potential for abuse."
R.S. 40:964 authorizes the use of a drug's common or usual name as follows:
"Schedules I, II, III, IV and V shall, unless and until added to pursuant to R.S. 40:962, consist of the following drugs or other substances, by whatever official name, common or usual name, chemical name, or brand name designated:"
Dr. Cooper testified that the "D" and "L" isomers "are the only isomers that we talk of when we are talking about methamphetamine." Thus, it is apparent that the common or usual name "methamphetamine, including its ... isomers" refers only to the "D" and "L" isomers.
We conclude that the legislature intended by the use of the phrase "including its ... isomers" in Schedule IIIA(2) of R.S. 40:964 only those isomers of methamphetamine which are subject to abuse. Furthermore, it should be noted that paragraph A under Schedule III specifically mentions substances "having a stimulant effect on the central nervous system." Under the clear wording of this provision of the statute, "including its ... isomers" would be limited to only those substances which would have a stimulant effect on the central nervous system. Thus, we find that the phrase "including its ... isomers" as used in Schedule IIIA(2) means not only those methamphetamine isomers which are subject to abuse, but which also have a stimulant effect on the central nervous system.
Hence, the language of Schedule IIIA(2) of R.S. 40:964 is not vague or overly broad. It is clear and provides an adequate warning to a person of ordinary intelligence as to the particular conduct which that subsection makes criminal. Therefore, Schedule IIIA(2) of R.S. 40:964 is constitutionally valid.
Since we find merit in the State's Bills of Exceptions Nos. 1 and 3 and conclude that Schedule IIIA(2) of R.S. 40:964 is constitutional, there is no need to consider the merits of the State's Bill of Exceptions No. 2 urged only in the alternative.
For the reasons assigned, the rulings of the district court in granting defendant Slayton's motion to quash and defendant Wilder's motion in arrest of judgment are reversed, and the case is remanded to the district court for further proceedings not inconsistent with the views expressed herein.
DIXON, J., concurs.
BARHAM, J., dissents.