400 So.2d 874 (1981)
STATE of Louisiana
v.
John W. GARRISON.
No. 80-KA-2405.
Supreme Court of Louisiana.
June 22, 1981.
*877 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Stephen M. Little, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Robert Garrity, New Orleans, Indigent Defender Board, for defendant-appellant.
LOTTINGER, Justice Ad Hoc.[*]
Defendant, John W. Garrison, was charged by bill of information with possession of a weapon by a felon, a violation of La.R.S. 14:95.1. Defendant was tried before a jury which found him guilty as charged. After denying defendant's motion for a new trial, the trial court sentenced the accused to a term of four years at hard labor. Defendant now appeals his conviction on the basis of ten assignments of error.

FACTS
Pursuant to an undercover "sting" operation involving the use of paid informants, the defendant was videotaped "selling" a .25 caliber pistol to Agent Charles Sprotts of the Department of the Treasury on July 7, 1978. Agent Sprotts testified at trial, relating the events of the "sale" and how he purchased the pistol from the accused for $15.00. The witness positively identified the defendant as the individual involved in the "sale." The video tape of the transaction, though without an audio portion, was also introduced at trial. Before its introduction, Jefferson Parish Sheriff's officer William Tucker explained the mechanical set-up of the video equipment and how he had recorded the deal with the accused on July 7. Also introduced at trial was the gun said to have been "purchased" from the defendant.
The defense relied on a theory of entrapment. The accused took the stand on his own behalf, admitted being involved in the "sale" but denied that the gun was his. He insisted that it belonged to the informant who had participated in the deal and that he was enticed into the transaction.

ASSIGNMENTS OF ERROR NOS. 1, 6 AND 7
By these assignments the defendant contends that the trial court erred in refusing to allow him to fully cross-examine state witnesses.
The first instance of alleged erroneous curtailment of cross-examination occurred during the questioning of state witness Jefferson Parish Sheriff's Officer William Tucker. This witness testified on direct that on the day of the alleged sale of the firearm, he was in an apartment that adjoined the one where the transaction took place and that he watched what transpired on a video monitor. Officer Tucker positively identified the defendant as the individual he observed via the monitor selling a pistol to another undercover agent. Upon cross-examination, the witness was asked to explain the establishment of the sting operation, and he related how the defendant's name had initially been provided by an informant. He also stated that he had had no prior contact with the defendant. Defense counsel then asked whether the witness had any other video recordings involving the accused; the witness responded that he had not.
*878 When defense counsel attempted to ask Officer Tucker what kind of transactions the undercover agents were negotiating, the state objected and indicated that it felt the defense was getting into other crimes evidence. The trial judge agreed and sustained the objection, but allowed the defendant to continue. The witness then explained that the operation was a fencing scheme for stolen property and that it had a cover as operating for the recovery of lost items. Defense counsel than asked if the agents involved "formed a habit of telling people...what kind of items you wanted." The officer responded that personally he had not, nor had he heard any other agents "order" an item. Next, the defendant asked:
"Q. Okay, did your brother members additionally or instead of that tell things such as, `well, you can get, say, $1,000.00 for a Mercedes Benz if you bring me one,' something like that?
"A. No, sir."
The state's objection to this question was sustained. The judge instructed defense counsel to limit his inquiry to this particular "sale" but did allow him to ask whether the witness knew that another matter against the defendant had been dismissed because of a lack of definite identification. Officer Tucker responded that he was unaware of that fact. Defendant then briefly continued questioning the witness about the workings of the sting operation and the use of informants.
Defendant now asserts that his cross-examination of this witness was unduly curtailed and that he was thereby prejudiced since he was unable to fully examine the witness for facts supporting his defense of entrapment. Particularly, defendant assigns as error the court's refusal to allow him to question the witness about whether certain sums of money were promised for different stolen property. Defendant urges that since one of the essential elements of his entrapment defense was to prove that criminal conduct was caused by the inducements of the officers rather than his own predisposition to such conduct,[1] his questioning in this regard was essential.
The scope of cross-examination is not limited to matters referred to on direct examination. When a witness has been sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case. La.R.S. 15:280; State v. Morgan, 367 So.2d 779 (La. 1979). However, the scope and extent of cross-examination rests largely within the discretion of the trial judge and his rulings will not be disturbed in the absence of an abuse of discretion. State v. George, 346 So.2d 694 (La.1977); State v. Nero, 319 So.2d 303 (La.1975). Given the thorough questioning of this witness regarding the defendant's transaction with the weapon, his testimony describing the sting operation *879 in general and how informants were used and the fact that he responded negatively to the question asked about agents "ordering" items, the trial judge's curtailment of questioning in regard to promises for goods was not an abuse of discretion. This conclusion is bolstered by the fact that the trial judge allowed the witness to be questioned about all previous transactions involving this defendant. Additionally the accused made no attempt to show that he personally was offered promises or was otherwise encouraged to participate in criminal conduct. Though proof of entrapment was of crucial importance to the defense, the defendant was allowed to question the witness in this regard. The ruling of the trial judge limiting cross-examination was not error.
In any event, any error was almost immediately cured by the testimony of Charles T. Sprotts, an agent of the United States Treasury Department. Sprotts testified on direct that he personally "purchased" the weapon from the defendant. On cross-examination, the defendant questioned him about the details of the sting operation and specifically about the sale of the .25 caliber pistol. Agent Sprotts related the details of using an informant, including who the informant was and the amount he was paid. He also stated that in operating the sting he would not suggest items he wanted to purchase or promise a dollar amount for such items. Rather, he would indicate his interest or lack of interest in an item mentioned by a "seller." Thereafter, the following exchange occurred:
"Q Then, it's your testimony that at no time did you or your people suggest or tell the defendant or the suspects, prior to their making a statement, where you would ask what they could get or you would give them an idea about certain items and then your people would tell them, `Look, find me a '78 Mercedes Benz or a Lincoln Continental and you could get a thousand dollars?'
"A From my recollection of the way the operation was run, no, as far as pointing out any type of items. This was not mentioned or brought up until the subjects were in the apartment and started mentioning what was available and once they brought it up, that a car was available, if it was run into through the course of the conversation. Once again, not being able to remember specifically what was said that long ago, I might have mentioned which car was worth more to them, but this was not mentioned before they made any statements concerning what they had or what they could get.
"Q Can I understand you to say that you did not tell them to go out, would it be fair to say that on at least some of these occasions it is quite conceivable that some of the people that you interviewed could have believed that you would buy anything they would bring to you, of value?
"A If it was of value, yes.
"Q Was a thousand dollars the going rate for a Mercedes Benz, for your operations, in that ball park figure?
"A It would generally run in that area, depending on what condition of the car was and what equipment it had with it.
"Q As far as you discussing a 1976 Mercedes, that was the type of discussion that went on, is that right?"
At this time, the state objected and the trial court sustained the objection finding that the examination was repetitious. Defendant urges that this ruling was error.
As noted above, the defendant argues that a full inquiry into the nature of the sting deals was essential to his entrapment defense and that the trial court's restricting his examination of this witness hampered that defense. In fact, the record reveals that the accused was able to fully examine Agent Sprotts on the mechanics of the operation and that this witness specifically denied enticing anyone or encouraging the "sale" of certain items. Before the state's objection, the witness had been fully questioned in regard to how "deals" were negotiated. *880 The trial court's ruling occurred when the defense counsel, though apparently attempting to again bring up facts surrounding an earlier transaction the accused had with the agents, pursued a seemingly repetitious line of questioning.
La.R.S. 15:275 provides:
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel."
The limitation of cross-examination here, in the face of the witness' previous response, was not an abuse of discretion. State v. Kenner, 384 So.2d 413 (La.1980).
The instant case is distinguishable from State v. Senegal, 316 So.2d 124 (La.1975), wherein this Court found as reversible error a trial court's restricting the cross-examination of a state witness. In that case, the defendant was also attempting to develop the defense of entrapment, and had asked the chief prosecution witness, a police officer, to explain what an informer was and what the one involved in that case had done. The trial judge restricted this attempt at cross-examination, agreeing with the state that it was immaterial and irrelevant. In the instant case, the defendant was not denied the right of confrontation and effective cross-examination since he was able to question the witness fully on what had transpired in regard to his sale of the pistol and the sting operation in general. The trial judge limited the cross-examination only when the questioning became repetitious and of little probative value but did not, as defendant urges, prevent exploration of the entrapment issue.
The accused asserts that there was also impermissible curtailment of his cross-examination of Agent Sprotts at a second instance. He assigns as error the ruling of the trial court that prevented him from asking whether he would have "purchased" the gun from Milton Jones (the informer). When the question was propounded to the witness, the state objected, insisting that it was irrelevant; the trial judge agreed and sustained the objection.
La.R.S. 15:441 provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
A trial judge's ruling as to relevancy should not be disturbed absent a showing of clear abuse of discretion. State v. Alford, 384 So.2d 761 (La.1980); State v. Echols, 376 So.2d 1244 (La.1979). Additionally, both before and after this question, the defendant had been allowed to question the witness fully about the conduct of the sting operation and whether individuals had been encouraged to participate. As noted above, in light of the opportunity to fully explore the possibility of entrapment, the trial judge's decision to prevent an apparently irrelevant hypothetical question was not an abuse of his discretion.

ASSIGNMENTS OF ERROR NOS. 2 AND 5
By these assignments the defendant asserts that the trial court erred in refusing to strike the testimony of state witnesses from the record and in allowing a witness to give impermissible testimony.
Defendant moved at trial that the testimony of undercover agents William Tucker and Charles Sprotts be stricken from the record. In support of his motion the accused urged that the verbal testimony of these witnesses be stricken because of the availability of a video tape of the alleged transaction. The trial judge denied this motion.
"The motion to strike evidence is unknown to the criminal procedure of Louisiana." State v. Kirsch, 363 So.2d 429 (La. 1978); State v. Vince, 305 So.2d 916 (La. 1974). Even if defendant had used the proper vehicle to challenge the testimony, the record reveals that the video tape *881 lacked an audio portion and thus the testimony of the agents was necessary not only to establish a foundation to the admission of the tape but also to explain to the jury what they were viewing.
In assignment of error number five, the defendant specifically objected at trial to Agent Sprott's testimony about how the accused handled the gun during the sale. He asserts that, since the video tape did not show him actually presenting the gun to Agent Sprotts, the witness should not have been allowed to testify about it. Agent Sprotts on direct explained that as the accused handed him the weapon he blocked the camera from recording the scene. Having been involved in the transaction the witness was clearly competent to testify to the defendant's actions. La.R.S. 15:463. Further, the defendant does not assert, nor can it readily be seen in the light of the other testimony and evidence properly introduced, that such testimony, even if erroneous, would have so prejudiced him as to require a reversal. La.C.Cr.P. Article 921.

ASSIGNMENT OF ERROR NO. 3
By this assignment the defendant contends that the trial court erred in allowing the introduction into evidence of the video tape of the alleged sale of the weapon.
Defendant asserts in brief that the tape should not have been introduced because it lacked an audio portion, because its production was controlled by a police officer and because its probative value was outweighed by its prejudicial effect. It should first be noted that since the defendant made no contemporaneous objection to the admission of the tape in the trial court pursuant to La.C.Cr.P. Article 841, he has apparently waived any right to assert this error before this Court. Not only did the defendant fail to object in the trial court, but the record reveals he apparently desired and encouraged admission of the video tape.
Even if the defendant had made a timely objection in the trial court, the evidence showing the accused in possession of a weapon is relevant to show the commission of the charged offense. La.R.S. 15:441. Further, the counterbalancing factors that would counsel the exclusion of this otherwise relevant evidencesuch as the likelihood of arousing jury prejudice or hostility, the creation of a collateral issue or unfair surprise to the defendantare not present. Additionally, the video tape was the best evidence of its contents. La.R.S. 15:436. The fact that it was introduced in addition to the testimony of Office Tucker and Agent Sprotts and was therefore somewhat cumulative is not a bar to its introduction. State v. Bonanno, 373 So.2d 1284 (La.1979). The lack of an audio portion does not render the tapes inadmissible. It is well-settled that photographic evidence is admissible when it is shown to be an accurate representation of the subject in question and sheds light on the matter before the court. State v. Otis, 339 So.2d 343 (La.1976). This was done through the testimony of Officer Tucker, who gave a thorough account of the taping of the "sale." Accordingly, even if there had been an objection at trial, the introduction of this evidence was not error.

ASSIGNMENT OF ERROR NO. 4
By this assignment the defendant urges that the trial court erred in allowing the introduction state's exhibit 3 into evidence. S-3 consisted of the .25 caliber pistol said to have been sold by the defendant to Agent Sprotts.
During the state's direct examination of Agent Sprotts the state offered to introduce the exhibit into evidence. The defense objected, urging without argument that the defendant's constitutional rights had been violated. In brief, however, the defendant urges only that evidence at trial did not sufficiently prove that the exhibit introduced was the same one "bought" from the defendant. In light of the defendant's failure to urge this objection in the trial court, he has apparently waived the right to assert it before this Court. La.C.Cr.P. Article 841.
*882 Assuming, arguendo, that the defendant had made a contemporaneous objection at trial that would have preserved his right to raise this error, the exhibit was properly admitted into evidence. Immediately before its admission, Agent Sprotts identified it as the gun he had obtained from the defendant on the day of the alleged "sale." He testified that his identification was based on the weapon's serial number, brand and caliber. Also before its admission, Jefferson Parish Deputy William Tucker identified the gun as the one which had been given to him by Agent Sprotts immediately after the "purchase" from the defendant. His identification was based on its serial number. He also testified that he had given it to Jefferson Parish Sheriff's evidence officer Dell Dumaine. Officer Dumaine had been called to the stand earlier and had identified the gun as the one given to him by Officer Tucker. In State v. Paster, 373 So.2d 170 (La.1979), this Court in rejecting a defendant's contention that exhibits were erroneously admitted because the chain of custody was not properly established said:
"To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact." (373 So.2d at 177).
In the instant case, unlike in Paster, supra, the exhibit was positively identified as the one taken from the defendant. The state established more probably than not that exhibit S-3, the .25 caliber pistol, was connected with the accused's case.

ASSIGNMENTS OF ERROR NOS. 8 AND 10
The defendant contends by these assignments that there was insufficient evidence to find him guilty of the charged offense.[2] In particular, he argues that the state's case-in-chief clearly established that the authorities had entrapped defendant into committing the offense.
Defendant was convicted of possession of a firearm by a felon, a violation of La.R.S. 14:95.1. The two essential elements of this offense are that the accused must have been convicted previously of one of a list of enumerated felonies and must have possessed a firearm or carried a concealed weapon. In the instant case, the essential element of defendant's prior conviction of a felony, possession with intent to distribute marijuana, La.R.S. 40:966, was stipulated to at trial. Further, the state introduced at trial the video tape which shows the defendant "selling" a .25 caliber pistol to an undercover agent. That agent testified about the "sale" and positively identified the defendant as the individual from whom he "purchased" the weapon. The weapon was introduced by the state and was identified by the federal agent as the one presented to him by the accused.
The standard used in reviewing the sufficiency of evidence as enunciated by the *883 United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant is guilty. State v. Morgan, 389 So.2d 364 (La.1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Hartman, 388 So.2d 688 (La.1980). The evidence presented in the instant case, seen in the light most favorable to the prosecution, is adequate under Jackson, supra, to justify the jury's conclusion beyond a reasonable doubt that the defendant was a convicted felon in possession of a weapon and that he had not been enticed into the offense by the authorities. As set forth above in Assignments of Error Nos. 1, 6 and 7 the state's case clearly established that the authorities had conducted a sting operation but failed to give any support to the defense suggestion that the police had instigated the offense by suggesting the kinds of items they desired.

ASSIGNMENT OF ERROR NO. 9
By this assignment the defendant urges that it was error to refuse his special requested jury charges. Three of the charges were concerned with the law relative to the testimony of an accused, an accomplice and/or informer. The other special requested charge concerned entrapment.[3]
At trial, the judge instructed the jury on what an accomplice was. He stated that the testimony of such an individual should be received with caution and weighed with great care. Though there was no specific instruction on the testimony of an informer or of an accused, the judge gave a thorough *884 instruction on the credibility of witnesses and the weight to be given to their testimony. The trial court in its charge also addressed the issue of entrapment stating:
"A defendant who is instigated or induced by a law enforcement officer or someone acting for him into the commission of a crime which he otherwise had no intention of committing is not guilty because he was entrapped.
"Entrapment is shown where it appears that an officer or someone acting for an officer instigated the defendant to commit an offense which the defendant otherwise would not have committed and had no intention of committing. It is not entrapment, however, if the defendant already had the requisite criminal intent and the officer or someone acting for him merely furnished the defendant with the opportunity for committing the offense.
"The fact that an opportunity is furnished or that the defendant is aided in the commission of a crime which originated in his own mind is no offense. There is a clear distinction between inducing a person to commit a crime and setting a trap to catch a person in carrying out criminal designs of his own conception. The primary emphasis is on whether or not the defendant had a predisposition to commit the crime. The reason for this defense is simple: officers of the law may not incite crime merely to punish the criminal.
"Thus, if you find:
1.) that the defendant did not have an intent to commit the offense charged before being instigated to commit it; and
2.) that the defendant was instigated to commit the offense charged by law enforcement officer or by one acting as the officer's agent;
then you must find the defendant not guilty."
Special requested charges are governed by La.C.Cr.P. Article 807 which provides:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
The judge's obligation under art. 807 is a corollary to his basic obligation to charge the jury as to the law applicable to the case pursuant to La.C.Cr.P. Art. 802. Under art. 802 the trial judge is required to cover every phase of the case supported by the evidence whether or not accepted as true. State v. Marse, 365 So.2d 1319 (La.1979). However, while it is the duty of the trial judge to give a special requested charge which does not require qualification, limitation, or explanation, requested charges which are already substantially given and covered by the general charge are properly refused. State v. Matthews, 380 So.2d 43, at 45 (La.1980). Since the charges requested by the defendant, particularly the one on entrapment, were in fact included in the trial court's general charge, the refusal to give those special charges was not error.
For the reasons above, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judges Lottinger, Edwards, and Ponder of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Watson.
[1] As set forth in State v. Batiste, 363 So.2d 639 (La.1978):

"Under the generally accepted view an entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. ALI Model Penal Code, Tentative Draft, § 2.10; W. LaFave and A. Scott, Criminal Law, § 48 (1972). This view, which has been labeled the "subjective" or "origin of intent" test for entrapment, reflects the views espoused in majority opinions of the United States Supreme Court, Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrels v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The lower federal courts are in accord. See, e. g. United States v. Esquer-Gamez, 550 F.2d 1231 (9th Cir. 1977); United States v. Garcia, 546 F.2d 613 (5th Cir. 1977); United States v. Russo, 540 F.2d 1152 (1st Cir. 1976); United States v. Jackson, 539 F.2d 1087 (6th Cir. 1976). It is so called because it focuses attention on the defendant's predisposition to commit the offense as well as the actions of law enforcement officials. The inquiry under this test goes beyond the fact that criminal conduct was committed at the instance of law enforcement officials. Once government instigation is shown, the inquiry focuses upon the predisposition of the defendant."
[2] In assignment eight, the defendant specifically urged that there was error in denial of his motion for a directed verdict. The directed verdict in jury trials became unavailable with the amendment of La.C.Cr.P. Article 778 by La.Acts 1975, No. 525 § 1. The trial judge had only such authority in bench trials. State v. Adams, 355 So.2d 917 (La.1978).

However, in State v. Peoples, 383 So.2d 1006 (La.1980) this Court held that even in the absence of a motion for a new trial (or a proper motion for a directed verdict) it would review a claim that the state's case was insufficient to support a conviction under a "no evidence" standard. The defense argument is thus considered here, albeit under the rational fact finder test of Jackson v. Virginia, now adopted by this Court.
[3] Defendant requested that the judge give the following charges:

"Special Charge # 1
"If the accused chooses to testify, he is a competent witness and his testimony is to be judged in the same way as any other witness.
"Special Charge # 2
"An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. However, the jury should keep in mind that such testimony is always to be received with cautions and weighed with great care.
"Special Charge # 3
"The testimony of an informer (if you believe Mr. Jones acted in such capacity), or any other state witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should always be considered with caution and weighed with great care.
"Special Charge # 4
"If an officer of the law induces or tempts a person to commit a crime which such person did not intend to commit and which he would not have committed except for said inducement or persuasion by such officer, such conduct on the part of the officer is improper and he is guilty of what in law is called "entrapment." If, however, a person alone conceives the idea of committing a crime, knowledge of which intention comes to such officer, the law does not prohibit or prevent the officer from resorting to any reasonable methods to catch the offender in order to prove his guilt. The law on this subject is concisely stated in a decision of our Supreme Court in the case of State v. Dudoussat, 47 La.Ann. 977, 17 So. 685, which decision was later reaffirmed in the case of State v. Rainey, 184 La. 547, 166 So. 670, wherein the Supreme Court said: `It is legitimate and proper to adopt devices to trap crime provided the device is not a temptation and solicitation to commit it.'
"If with this explanation of the word `entrapment' you believe that the accused committed the offense with which he is charged but that he was entrapped by the officers to commit the same you should acquit him. If on the other hand you believe from the evidence beyond a reasonable doubt that there was no entrapment of the accusedas I have explained the meaning of that word to youand that the officers neither conceived nor planned the act of the accused but that it was conceived and executed by the accused himself, and that he is guilty of the offense charged beyond a resonable doubt, it is your duty to convict him.
"If you find that the state has offered no evidence to show:
(A). An existing course of similar criminal conduct on the part of the accused,
(B). The accused's already formed design to commit the crime or similar crimes;
(C). His willingness to do so as evidenced by ready compliance;
(D). Predisposition on the part of the accused;
(E). Or reasonable cause to believe that accused was engaged in criminal conduct,
then you must conclude that the accused was tempted or solicited or induced to commit the crime and was entrapped, and, as a consequence, the accused must be acquitted."