414 So.2d 1237 (1982)
STATE of Louisiana
v.
William F. SMITH.
No. 81-KA-2660.
Supreme Court of Louisiana.
May 20, 1982.
*1238 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., Bobby Stromile, Asst. Dist. Atty., for plaintiff-appellee.
*1239 S. Patrick Phillips, Indigent Defender Bd., Bossier City, for defendant-appellant.
PHILIP C. CIACCIO, Justice Pro Tem.[*]
The defendant, William F. Smith, was charged with distribution of methamphetamine. R.S. 40:967(A); 964(C). A jury found him guilty as charged and he was sentenced to serve three years at hard labor. The defendant appeals his conviction on the basis of six assignments of error, of which he argues and briefs only three.[1]
On February 4, 1980, Jack Miller, who was an undercover agent employed by the Federal Drug Enforcement Task Force and the Shreveport Police Department, became engaged in an undercover operation which involved a drug purchase from the defendant, William Smith.
Agent Miller secured $125.00 from the Bossier City Police Department and proceeded by car, with a confidential informant, to the Hornet Gasoline Station, which is located in Bossier Parish. Upon arrival at the gas station, the confidential informant introduced Agent Miller to the defendant. Agent Miller told the defendant that he wanted a couple of dollars worth of gas and that he was interested in buying some "crystal" (i.e., another term for methamphetamine). The defendant told Miller to wait until he could go inside the office.
Agent Miller waited inside the station office while the defendant pumped gas for some other customers. During this time Miller observed some ten to twelve people milling around the station. He next observed a white van stopped alongside the station. He saw the defendant walk up to the van and talk to two men inside. The defendant took out a roll of money which he gave to the occupants of the van and for which he received a small package wrapped in brown sack paper.
The defendant returned to the office and went straight into a rear room. He returned to the office where Miller was waiting and gave him a small clear triangular cellophane packet containing a white powder. Miller, in return, gave Smith $125.00. Miller, joined by the informant, returned to the car and left the scene.
Miller performed a field test on the white powder when he returned to the station. The powder tested positive for methamphetamine. It was placed in the safe by Agent Miller until it was turned over to the crime lab on February 8, 1980. The defendant was not arrested until September, 1980, as this transaction formed only a small part of a larger undercover drug operation.
Assignment of Error No. 1.
The defendant contends that the trial court erred in refusing to grant his motion for a judgment of acquittal. He argues that the State failed to prove an essential element of the crime, namely, that the methamphetamine that was the subject of this transaction was not proven to be of the type which has a "stimulant effect on the nervous system." R.S. 40:964(c). The defendant reasons that this is an essential element of proof, under the language of the statute, as not all methamphetamine have such an effect. State v. Slayton, 301 So.2d 600 (La.,1974), rev. other grounds. 338 So.2d 694.
The standard for granting a motion for acquittal is set forth in Louisiana Code of Criminal Procedure, Article 778:
Art. 778. Motion for acquittal
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.

*1240 If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense.
Under this statute the trial judge has no authority to grant a directed verdict in a jury trial. State v. Garrison, 400 So.2d 874 (La.,1981).
Since this case was tried before a jury, the court was procedurally correct in denying the defendant's motion for a judgment of acquittal.
The more difficult consideration concerns the substantive issue presented by this argument. The defendant argues that this Court must consider that all expressions in a statute have some meaning.
La.R.S. 40:964(C) reads as follows:
C. Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including their salts, isomers and salts of isomers, whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:
(1) Amphetamine
(2) Methamphetamine
(3) Phenmetrazine
(4) Methylphenidate
(5) Phendimetrazine
(6) Phentermine
La.R.S. 40:961(34) defines a "stimulant" as follows:
"a drug which contains a quantity of amphetamine or any of its isomers; any salt of amphetamine or any salt of an insomer of amphetamine; or any substance which the secretary of the Department of Health and Human Resources after an investigation, has found to be and by regulation designated as habit forming because of its stimulant effect on the central nervous system."
Defendant argues that the grammatical construction of the statute limits the prohibited methamphetamines to only those having a stimulant effect on the central nervous system. Thus, the prosecution must prove not only that the substance at issue is a methamphetamine but also one that stimulates the central nervous system. Defendant's grammatical construction argument appears in his brief as follows:
Elementary rules of grammatical construction dictate that the clause "having a stimulant effect on the central nervous system" modified the noun which it follows"substances." Further, not being separated from the noun by a comma, the clause is a restrictive clause, i.e. it restricts the noun which it modifies.
The restrictive clause following the noun "substances" limits the scope of the "substances" defined therein by restricting the "substance" to only those "having a stimulant effect on the central nervous system."
Defendant relies upon the decision of this court in State v. Slayton, 301 So.2d 600 (La.,1974) to support his argument, as this court held in State v. Slayton, supra, that since some isomers of methamphetamines were "inactive" and were included in "over the counter" preparations, those "inactive" methamphetamine compounds were not included in the definition of stimulant but, included, were only those methamphetamines which had a stimulant effect on the central nervous system.
Determination and definition of acts which are punishable as crimes are purely a legislative function. La.Const. Art. 2, Sec. (s) 1, 2; Art. 3, Sec. 1. State v. Rodriguez, 379 So.2d 1084 (La.,1979). Therefore, in Louisiana, unless an act can be brought within the meaning of the words of a statute it is not a "crime." State v. Vaccaro, 200 La. 475, 8 So.2d 299 (La.,1942.)
The defendant was charged pursuant to Louisiana Revised Statute Title 40 Section 967 A, which reads as follows:
967. Prohibited acts-Schedule II, penalties A. Manufacture, distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:

*1241 (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II.

* * * * * *
The Louisiana Revised Statutes set forth a schedule of controlled dangerous substances:
964. Composition of schedules
Schedules I, II, III, IV and V shall, unless and until added to pursuant to R.S. 40:962, consist of the following drugs or other substances, by whatever official name, common or usual name, chemical name, or brand name designated.

* * * * * *
We are satisfied that the State met its burden of proof in this case.
James Barnhill, an employee of the Northwest Louisiana Criminalistics Laboratory in the position of Laboratory Manager, by stipulation, was qualified as an expert in the field of chemistry, particularly the chemical analysis of certain compounds. He testified that he was in charge of drug analysis and had been employed in that capacity since August of 1970, and had testified as an expert in the field of drug analysis in many court proceedings. He further testified that he examined the substance which is the subject of this case and found that the powder in that plastic triangle was determined to contain the drug substance known as "methamphetamine". He stated that he was familiar with the controlled dangerous substance statute and the schedule contained therein and, when asked what schedule this particular substance fell within, he responded: "It is in Schedule II listed under stimulants." No further clarification of this opinion was sought by either the prosecuting attorney or defense counsel.
A stimulant is by legal definition a "drug" which has a "stimulant effect on the central nervous system." The witness classified the methamphetamine that he had examined as a stimulant, thereby excluding other methamphetamines which are "inactive" and not covered by this law. The jury could conclude from his testimony that this substance was the type of methamphetamine which was unlawful, that is, the type which has an effect on the central nervous system.
Therefore, we find that Assignment of Error Number 1 lacks merit.
Assignment of Error Nos. 2 and 4.
The defendant, through assignments of error numbers 2 and 4, contends that the trial court erred in its charge to the jury. In particular, the defendant contends that error was committed when the judge refused to instruct the jury that the statutes which deal with the prohibition of methamphetamines refer only to those which have a stimulant effect upon the central nervous system, and, in order to convict the defendant, they must find that the evidence established, beyond a reasonable doubt, that the substance identified as State Exhibit 1 was a methamphetamine which had a stimulant effect on the central nervous system.
In a criminal prosecution, the trial court must charge the jury, when properly requested, as to the law applicable to any theory of defense which jurors could reasonably infer from the evidence, but this charge must be supported by the evidence presented at the trial, as the trial court is not required to instruct the jury on abstract principles of law. State v. Telford, 384 So.2d 347 (La.,1980).
The record is devoid of any evidence which would give rise to the defense that this methamphetamine might be of the type which had no effect on the central nervous system.
The record reveals that the defendant was afforded the opportunity, upon proper notice, to have the chemical substance examined prior to the trial. There is no evidence that this examination was ever performed. Moreover, during the trial the *1242 defense stipulated to the qualification of James Barnhill as an expert. On cross examination of Mr. Barnhill, no question was directed to him by the defendant regarding the effect of this methamphetamine which he had analyzed. No countervailing evidence was presented by the defendant regarding the nature of this drug and no objection was lodged at the time it was introduced into evidence. The only mention of such a defense was when the defendant argued the point before the judge. An argument, unsupported by evidence, is insufficient to support a charge to the jury.
Furthermore, a requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent; it need not be given if it is included in the general charge or in another special charge which is given. C.Cr.P. Art. 802, 807. State v. Murray, 375 So.2d 80 (La.,1979).
The defendant, at the close of the trial, filed a timely request for a special jury charge concerning the proof necessary to convict the defendant of illegal distribution of methamphetamine.[2]
In the judge's general charge to the jury, he specifically stated that in order to convict the defendant they must find that the defendant knowingly and intentionally distributed a Schedule II controlled dangerous substance, namely, methamphetamine, in violation of Revised Statute Title 40, Section 967 A and he read the applicable part of the statute. The judge further instructed the jury that methamphetamine is listed under Revised Statute Title 40, Section 964 (C). Section C provides "Stimulants." The court then proceeded to read this section of the statute, including the portion of the statute which states that the substances have a stimulant effect on the central nervous system.
The closing argument of the defense counsel helped to bring the court's general jury charge into even clearer focus. In closing argument he stated that "all methamphetamines are not controlled dangerous substances" and "unless they are proven by the State to be substances (methamphetamines) which have a stimulant effect on the central nervous system, they are not controlled dangerous substances." He further stated that "if they are not controlled substances, then the transfer of this little package would be no more illegal than the transfer of an aspirin, tylenol or a bufferin."
Our review of the record convinces us that the trial court's general jury charge was an accurate and complete statement of the applicable law. The points made by the defendant and requested in his special charge were wholly contained in the court's general charge.
Furthermore, the defense argument, in closing, helped to clarify any misconceptions which may have arisen because of the format in which the court's general charge was presented.
The trial court did not commit error in refusing to give the defendant's special jury charge. The special charge was contained in the court's general charge. The general charge was a complete and accurate statement of the law of the case.
*1243 Assignments of Error Numbers 2 and 4 are without merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED
DIXON, C. J., concurs with reasons.
BLANCHE, J., concurs for reasons assigned by Dixon, C. J.
DIXON, Chief Justice (concurring).
I respectfully concur.
The result reached in the majority opinion is right, but it is not correct to say that our opinion in State v. Slayton, 301 So.2d 600 (La.1974), excluded inactive methamphetamines from operation of the statute. In State v. Slayton, Schedule III A (2) of R.S. 40:964 as it then read,[1] was challenged as unconstitutionally vague and overbroad. Specifically, it was argued that the language "including its ... isomers" was overbroad because not all isomers found in methamphetamines cause a stimulant effect on the central nervous system; according to expert testimony introduced by the accused, only "D" and "L" isomers are optically active. This court held that the objectionable language was limited by paragraph A which proscribes only those substances that have a stimulant effect on the body. Since only "D" and "L" isomers have such an effect, they are the only isomers encompassed within the wording "including its isomers."
In reliance on Slayton, supra, defendant argues that the state failed to prove an essential element of the crime, namely, that methamphetamines have a stimulant effect on the central nervous system. The only testimony relevant to this point is that of Jimmy Barnhill, an expert witness in the area of chemical analysis of drugs. Barnhill testified that he tested a compound purchased from defendant and that it was methamphetamine, found "in schedule two, listed under stimulants."
Whereas not all isomers have a stimulant effect, all methamphetamines do have a stimulant effect on the central nervous system (due to the presence of "D" and "L" isomers). Methamphetamines belong to the amphetamine drug group; by definition, they are central nervous system stimulants. Dorland's Medical Dictionary, 24th ed. (1965); Schmidt's Attorney's Dictionary of Medicine (1980); see Baumgartner and Morrell, Pharmaceutical Industry Regulation by the Department of Justice, 23 Syracuse L.Rev. 785, 793-810 (1972); About Your Medicines (Abstracted from the 1981 United States Pharmacopeia Dispensing Information) (1981). Thus, the state met its burden of proving that the substance had a stimulant effect upon the central nervous system by introducing evidence that the drug obtained from defendant was methamphetamine. (For similar reasons, the trial court properly refused to give defendant's requested jury charges since they were framed in terms of the stimulant effect of methamphetamines, not of isomers).
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit and Judges Israel M. Augustine, Jr. and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, Watson.
[1] Assignments of error which are not argued and briefed are considered abandoned. State v. Gardette, 352 So.2d 212 (La., 1977).
[2] Defendant's Special Charges read as follows: Requested Charge No. 1.

In order to convict the defendant you must find that evidence proves to your satisfaction beyond a reasonable doubt the following:
1. That there was a distribution of a substance
2. That defendant distributed the substance
3. That defendant acted knowingly or intentionally
4. That the substance distributed was methamphetamine
5. That the methamphetamine distributed has a stimulant effect on the central nervous system
Alternate Requested Charge No. 1.
La.R.S. 40:964 and 40:967 prohibits the distribution of only those methamphetamines which have a stimulant effect on the central nervous system. Thus, in order to convict the defendant of either this charge or any charge responsive thereto, you must find that the evidence establishes beyond a reasonable doubt that the substance identified as State Exhibit 1 has a stimulant effect on the central nervous system. State v. Slayton, 301 So.2d 600 (Sup.Ct.1974).
[1] Schedule III A (2) of R.S. 40:964 provided:

"A. Stimulants. Unless specifically excepted or unless listed in another Schedule, any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:
. . . . .
(2) Any substance (except an injectable liquid) which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." (Emphasis added).