The opinion of the court was delivered by
McEnery, J.
The accused was a member of the Oity Council of New Orleans. One Sherman had pending before the Council an application to be permitted to open a barroom in his place of business. The ae *994 cused made a proposal to him that for one hundred dollars he would secure him the privilege asked for. Subsequent to this proposal, Sherman, O’Malley, Sergeant Aucoin of the police force, and some newspaper reporters arranged a plan to entrap the accused. The plan was successful. Marked money, to the amount of one hundred dollars, was tendered to the accused, in response to his proposal, by Sherman, and he accepted it.
The other parties were secreted and witnessed the transaction. There is a contention that Sherman was an actual accomplice, and not a feigned accomplice.
The judge’s charge to the jury, and the admission of testimony, were based on the theory that the witness and prosecutor, Sherman, was an apparent or feigned accomplice. This question is disposed of in the discussion of bill No. 2. We will, as we have ascertained from the evidence in the record that the man Sherman was a feigned accomplice, treat him in discussing the following bills as an ordinary witness.
Before doing so, however, we will notice that part of defendant’s complaint to the inconsistency of the judge’s instructions to the jury.
In one part of the charge the trial judge says that if the giver of a bribe acted merely with a view to secure the detection and conviction of the accused, and the latter accepted the bribe with the intent to be influenced thereby, he is guilty, and the other part of the charge is that the State must establish beyond a reasonable doubt, all the material averments in the indictment, to-wit: * * * “That the defendant, a member of the City Council and a municipal officer, in such capacity, received one hundred dollars from Sherman as a bribe, present aud reward, which was corruptly given to him by said Sherman.”
Here were two charges on two different theories of the case, one by the State, that Sherman was a feigned accomplice, and the other by tbe accused, that he was an actual accomplice under the averments of the indictment. We think the charge is not objectionable; certainly, it did the accused no injury, as it was based on the theory of his defence.
Bill No. 1 in the record has reference to the testimony of one Henry Lochte. Considering Sherman to be an ordinary witness, Lochte’s testimony is objected to on the ground that it was the *995 statement of a collateral fact, and in no way connected with the act of bribery committed on the 29th of August, 1894, and in no way tended to confirm the testimony of Sherman, and was irrelevent and heresay.
The testimony of this witness is to the effect that some five days prior to the date of the offence with which the defendant is charged, Sherman, the prosecuting witness, said to him that the defendant wanted one hundred dollars to get him, the witness, a permit to run a barroom in his place of business; that he told the witness that the proper place for him to go was before the grand jury. Sherman said he would go, but he first wanted to get his permit. After the arrest of defendant, he saw Sbarman in company with one O’Mally at his store, and the visit of these men was to see about the proposition made to him by Dudoussat.
For the admission of this testimony the trial judge assigned as a reason that fabrications, improper motives and prevarication had been imputed to the witness Sherman,’and on the ground that Sherman was an apparent accomplice, he permitted the testimony to be received to confirm the statements of the witness Sherman, which had been assailed, those statements being prior to and were similar statements made by the witness, and made at an unsuspicious time.
“ Where the opposing case is that the witness testified under corrupt motives, or where the impeaching evidence goes to charge the witness with a recent fabrication of his testimony, it is but proper that such evidence should be rebutted.” Whart. Crim. Ev., Sec. 192.
The case of State vs. Cady, 46 An. 1347, sustains this doctrine. In this case the general character of the witness was not attacked for truth and veracity, but particular facts were charged as false and fabricated. Hence it was competent to show that at a time unsuspicious he made similar statements as to the facts contradicted.
But we think under the facts of this case the evidence was material and important, and had direct bearing upon the issues presented, and were, in fact, a part of the transaction, to understand which it was essential that these facts should have been narrated.
If the “trap ” prepared and arranged by the witness Sherman, O’Malley and certain newspaper reporters and a sergeant of police, to procure evidence of bribery against the witness stood alone, it *996 would at once appear that it was an inducement, an opportunity offered, and a temptation presented to commit the crime. The defendant, under such a. state of facts, would have been entitled to a verdict of not guilty.
It was essential therefore to show that the defendant proposed to commit the crime, and the means employed were not used as an inducement or temptation, but for the purpose of securing the evidence. From the testimony embodied in the bills of exception it appears that the defendant had made up his mind to commit the of-fence., and had made a proposition to the witness that for one hundred dollars he would, in his official capacity as councilman, procure him a permit to conduct a barroom. The application for the license was pending whon the trap was laid. These matters had been sworn to by Sherman. They were contradicted as being fabricated. There can be no doubt, therefore, that prior statements similar to those made on the trial, made at an unsuspicious time, were legal and competent testimony, and were, in fact, a part of the transaction necessary to disclose, in order to convict the defendant.
We are not disposed to commend the means employed in this particular case, and, under the circumstances, they were of such character as to leave but little discrimination between prosecutor and accused. The defendant might have escaped disgrace if the opportunity had not been presented. But he had proposed to commit the crime, and seized the opportunity presented to do so.
Bill No. 2 was reserved to a portion of the written charge, and is to the effect that the charge was erroneous, as it did not instruct the jury, that to constitute the crime of receiving a bribe there must co-exist on the part of the giver and receiver of the bribe a corrupt intent — one to influence the other, and the other to be influenced to vote or to exercise official power or perform official duty with partiality or favor. The bill, in effect, denies that there can be a feigned accomplice in bribery, and, therefore, the theory upon which the conviction was had is incorrect. The indictment charges as though the prosecuting witness was an accomplice. The charge as to him may has been groundless; he may be innocent of the charge, but the question is, was the charge properly made against defendant. In other words, could he commit the crime of bribery without the co-operation of the defendant? Was the joint act of both necessary?
*997 The statute defining the offence is in the language of the article of the Constitution. It has a dual capacity. It charges two acts, and affixes to them the same designation and gives the same description, and imposes the same penalty; yet they are each distinct offences.
An analysis of the article of the Constitution and Act No. 78 of 1890 will show that it is made an offence to give a present or reward to any officer of the State or of a municipality with the intent to influence him in the discharge of official duty. Any officer so receiving such reward or present is also charged with the same offence — bribery. They are intimately associated, it is true, and the words so receiving would at first reading incline one to the opinion that there necessarily must be co-existent the giving and taking with the intent charged in the statute. The giver may tender with the intent to corruptly influence, and the acceptor may receive without such intent — the present or reward. Unquestionably, the giver would be guilty of a violation of the statute. And so the acceptor may take a present innocently tendered, yet if it should be proved that it influenced his official action, he would also be guilty of a violation of the statute.
We are of the opinion that the statute does not require a mutual or reciprocal agreement to commit the crime of bribery.
Bill No. 3. After the judge had charged the jury, twelve additional special charges were tendered to him, which he refused, and gave his reason for refusing each special instruction. Special charge No. 1 was refused because the trial judge had in substance given the same in his general charge. This was sufficient. When he correctly announces the law in his own language, he is not required to give the same instructions to the jury in the language of counsel.
Nos. 2. and 3 have been passed upon by this court, and No. 4 has been passed upon in this opinion. The refusel to charge as requested in No. 6 is stated by the judge to be that he had already charged that there was a marked distinction between artifices used to detect persons suspected of being engaged in criminal acts and means used to tempt those to commit such acts. In his charge, the judge stated, “it is legitimate to adopt such measures as may be deemed necessary to detect crime, provided the means used do not amount to a practical inducement or solicitation to commit it.” This instruction is supported by the authorities. Under the evidence introduced it was competent for a jury to determine whether the *998 accused was a feigned or an actual accomplice. The record shows all the facts necessary to form a conclusion on this point went to the jury. The special instruction, therefore, was properly refused. No. 7 is practically the same as above. Nos. 8, 9, 10, 11 and 12 relate to the corroboration of the testimony of accomplices, which has already been disposed of. The general charge in all matters referred to therein, and to which the special charges alluded, covered all the. matter, not so much in detail, but sufficiently in substance, to intelligently inform the jury of the law applicable to the case. Those which were refused have’been fully discussed herein, sustaining the trial judge in his ruling.
Bill No. 4. The defendanf asked a witness: “ What did Sherman, the prosecuting witness, or one of the witnesses of the State, say about his father and mother,” to show that the prosecuting witness was not named Sherman, but that he had assumed said name to cover up his idendity and to discredit his general reputation. The question was objected to by the District Attorney and the objection sustained. 'The evidence was irrelevant and immaterial, and the ruling was correct.
There is nothing in the motion for a new trial to attract our atten - tion except the oral instructions of the judge to the jury, who came into court, on failing to agree, and these oral instructions were then given. The counsel for the accused were not present. They were looked for but could not be communicated with. It was not essential that they should have been present.
It appears that in the early stage of the case the attorneys for the defence had requested a written charge. This was given as requested. When the jury returned into court, in the absence of a bill of exception reciting the oral charge, we will presume that the judge only reiterated what was in his written charge.
It does not appear that any instructions as to the law in the case were given to the jury.
The oral instructions were simply in reference to the jury’s inability to agree upon a verdict. The judge told the jury that it was exceedingly desirable that they should agree as soon as possible, and that the court had no desire to coerce them; that jurors were sometimes stubborn and held out to the end, assigning no reasons for their stubbornness; that he hoped the jury possessed no such feeling. Some jurors might think it humiliating to yield their opinion, *999 but they should listen to the views of others and arrive at an honest verdict. If it were an ordinary case he would order a mistrial, but as the case was one of importance he would not do so without mature deliberation. We fail to perceive any coercion of the jury, or any wrong inflicted upon the defendant, or any reason why there should be a new trial because of the absence of defendant’s counsel at this interview between judge and jury. State vs. Green, 7 An. 518.
If a case should occur where the trial judge should force a verdict against the accused by prolonging the deliberations of the jury beyond a reasonable period, imposing upon them physical suffering and endangering their health, it will be time for an expression of opinion as to the relief prayed for by the defendant. The instant case affords no opportunity for an expression of an opinion on this subject.
The witness, Sherman, was indicted as an accomplice. The defendant’s counsel urge that this operates as an estoppel, and the State can not deny that fact, and that the introduction of evidence and the rules applicable to the same must be governed by this fact.
We know of no law which applies the doctrine of estoppel in criminal trials. The State might indict A for the murder of B. A might be acquitted. This would not estop the State from punishing 0, the real criminal.
Judgment affirmed.