STATE OF LOUISIANA                           NO. 23-KA-492

VERSUS                                       FIFTH CIRCUIT

JOACHIM J. COTTON                            COURT OF APPEAL

                                             STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-2268, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING


July 31, 2024


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Stephen J. Windhorst,
John J. Molaison, Jr., and Amanda L. Calogero, Pro Tempore


**<u>CONVICTION AFFIRMED; REMANDED FOR RESENTENCING</u>**
    **JJM**
    **SJW**
    **ALC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Juliet L. Clark

COUNSEL FOR DEFENDANT/APPELLANT,
JOACHIM J. COTTON
      Prentice L. White

**MOLAISON, J.**

The defendant, Joachim J. Cotton, appeals his conviction of attempted indecent behavior with a juvenile under the age of thirteen. For the reasons that follow, we affirm his conviction, vacate his sentence, and remand for resentencing.

## PROCEDURAL HISTORY

On May 19, 2021, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Joachim J. Cotton, with indecent behavior with a juvenile under the age of thirteen on or between March 1, 2017 and April 6, 2021, in violation of La. R.S. 14:81 (count one) and sexual battery of a child under the age of thirteen on or between March 1, 2017 and April 6, 2021, in violation of La. R.S. 14:43.1 (count two). The defendant pled not guilty.

On March 2, 2023, the twelve-person jury returned a unanimous lesser verdict of attempted indecent behavior with a juvenile as to count one. The jury was unable to reach a verdict on the charge of sexual battery of a juvenile under the age of thirteen, resulting in a mistrial on count two. The trial court denied the defendant's motions for a new trial and post-verdict judgment of acquittal.[1]

On March 29, 2023, the trial court sentenced the defendant to twelve years imprisonment, imposed fines, and ordered that the defendant register as a sex offender.

The State filed a multiple offender bill of information alleging that the defendant was a third-felony offender as to count one, having previous convictions of violating La. R.S. 14:62.2 on October 6, 1998, and La. R.S. 14:60 on November 30, 2006. After the defendant stipulated to being a third felony offender, the trial court vacated the defendant's original sentence and sentenced the defendant as a

---

[1] The motion for new trial was based on an evidentiary ruling made by the trial court during the trial. The motion for post-verdict judgment of acquittal alleged that "the lack of evidence, coupled with the hung jury and corresponding mistrial on count two" did not justify "a finding of guilty of the responsive verdict as to count one."

third-felony offender to twelve years imprisonment without the benefit of probation or suspension of sentence. The trial court also imposed court costs and fees.

This timely appeal followed.

## FACTS

Kendra Gros testified that she had two daughters and two sons – V.R., H.R. J.R., and I.R.[2] She married the defendant in 2016. Beginning in 2017, Kendra's children lived in the home with her and the defendant. The defendant's son, Grayson, lived with her and the defendant in a house on James Street in Marrero. Grayson was diagnosed with Type I diabetes when he was approximately three years old.

The defendant was a tugboat captain who worked on the boat for twenty-eight days and then was home for fourteen days. Kendra testified that after Grayson had a seizure because of low blood sugar, she asked the defendant to put motion-activated cameras in the living room, the dining room, and Grayson's room. After installing the cameras, the defendant used the cameras to monitor her and the children. He spoke to them through the cameras and reminded the children to perform their assigned chores.

Kendra testified that in 2019, I.R. told Kendra that the defendant was touching her "on her private." She questioned the defendant, and he denied this allegation. Kendra did not report this incident to the police.

Shortly afterward, V.R., who is older than I.R., reported to a school counselor that the defendant was touching I.R. The Department of Children and

---

[2] In the interest of protecting minor crime victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), the judges of this Court have adopted a policy that this Court's published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (i.e., parent, sibling, or relative with the same last name as the victim). *State v. E.J.M., III*, 12-774, 12-732 (La. App. 5 Cir. 5/23/13), 119 So.3d 648, 652 n.1. *See also* Uniform Rules of Court - Courts of Appeal, Rule 5-2.

Family Services (DCFS) conducted an investigation, but nothing resulted from the investigation, and there were no arrests. After making these allegations, V.R. went to live with another family member.

In April of 2021, Kendra heard an exchange between the defendant and I.R. The defendant told Kendra that he had found I.R.'s journal and read an entry written by I.R. to her deceased father, stating that she hated the defendant. Kendra testified that I.R. told her that she wrote to her dad that the defendant was touching her again. Kendra looked through the journal and did not see an entry stating that the defendant was touching I.R., but she noted that someone ripped out two pages. Kendra used a crayon to color the pages behind the removed pages, attempting to see the content written on the missing pages. After coloring the page, she only saw some drawings and some words. No one found the ripped-out pages.

Kendra testified that the defendant denied ripping pages out of the journal, denied touching I.R., and "would not look her in the eye" when responding to her. Eventually, Kendra called the police. As part of the investigation, she took I.R. to meet with the police, to the Children's Advocacy Center (CAC), and to StillChildren's Hospital. Kendra testified she and I.R. moved out of state because she felt threatened. Her other children stayed in Louisiana.

V.R. testified that she had three younger siblings, H.R., J.R., and I.R. She testified that the defendant married her mother when she was about fourteen. In 2019, V.R. overheard a conversation between her mother and I.R. in which I.R. stated that the defendant had touched her. V.R. overheard her mother talking to the defendant regarding I.R.'s allegation. No one called the police; her mother assured her she would handle the situation, but nothing happened.

V.R. testified that she reported this information to her school counselor about a month later. The counselor contacted DCFS, and V.R. spoke to an investigator. A DCFS investigator came to their house, and the police "got

involved." V.R. testified that after the investigation was closed, the defendant kicked her out of the house because she reported the incident. V.R. moved into her uncle's house, then moved back into the house with her mother and the defendant in late 2020 or early 2021.

J.R. testified that he had three siblings, V.R., H.R., and I.R. He went to live with the defendant and his mother after his father died when he was about eleven years old. J.R. testified that the defendant used the cameras in the house to check to see if they completed assigned chores. The defendant spoke to them through the cameras.

J.R. testified that in 2021, the defendant asked him to grab I.R.'s book. He took the book from I.R. and flipped through it while teasing I.R. about it, but he did not read anything in the book. The defendant tried unsuccessfully to take the book from J.R. J.R. put the book in the closet of the defendant and his mother's bedroom. He later gave the book to his mother at his mother's request.

Jefferson Parish Sheriff's Office (JPSO) Detective Kristen Hollis[3] testified that in 2019, after receiving information on an investigation that involved the defendant and I.R., she set up the forensic interview of I.R. at the CAC. I.R. did not make a disclosure during the interview, nor when Detective Hollis spoke to I.R. Detective Hollis interviewed I.R.'s mother, who gave limited information regarding I.R.'s disclosure. Stillwell Russell from DCFS also interviewed the victim.[4] The case was closed after Detective Hollis exhausted all efforts to obtain further information.

---

[3] The transcript provides that the witness' name is Kristen Lyvers; however, she stated that Hollis was her married name, and she preferred Hollis.

[4] The defense and the State agreed to a stipulation that if Stillwell Russel was called as a witness he would testify:

> [T]hat he was employed by the Louisiana Department of Children and Family Services in February of 2019, that he – I'm sorry, that he was contacted by a John Ehret High School counselor to investigate a case of reported child sexual abuse regarding Joachim Cotton and [I.R.], that was reported by [V.R.] and that he did conduct an investigation, which included interviews with the reported person, [I.R.], Joachim Cotton and Kendra Cotton and that [I.R.] did not disclose

Detective Hollis testified that in 2021, I.R. reported that the defendant had continued the abuse from 2019, fondled her vagina, and performed oral sex on her. After speaking to I.R., Detective Hollis set up a CAC interview for I.R. Detective Hollis spoke to I.R. after the interview. I.R. reported oral sexual abuse had occurred but did not disclose this during the CAC interview. Detective Hollis obtained consent to search the residence on James Drive, including the backyard shed.

Detective Hollis and investigators looked for the cameras referred to by I.R. Officers found cameras, a laptop, and a tablet in the shed. After searching these items, they found nothing of significance to the investigation. Based on I.R.'s statements to Detective Hollis and the CAC interview, Detective Hollis authored an arrest warrant for the defendant.

Aubrey Ziegler, a forensic interviewer at the Jefferson CAC, testified that she interviewed I.R. twice, once in 2019 and once in 2021. She recorded both interviews; after being admitted into evidence, the jury viewed the tapes.

I.R. testified that she had three siblings, V.R., H.R., and J.R. She was six or seven years old when her mother married the defendant, and they moved into the defendant's house on James Street. The defendant's son, Grayson, who had diabetes, also lived in the house. After Grayson had a seizure, they put cameras in the house. One of the cameras faced her and Grayson's bedroom.

I.R. testified that in 2019, she told her mother that the defendant was touching her in her private area, but she did not give her mother any details. Her sister, V.R., reported this to the school counselor, and the CAC interviewed I.R. I.R. did not state what happened in this interview. I.R. testified that someone from DCFS came to speak to her, but she did not tell them what happened to her. The

---

abuse during the Department of Children and Family Services investigation. And, lastly, that the Department of Children and Family Services' investigation did not result in a finding of abuse.

defendant stopped touching her immediately after this incident, but then the abuse started again.

I.R. testified that the defendant put his two fingers inside of her underwear to touch her vagina. She could not recall how often this occurred but stated that it happened frequently in her bedroom, the living room, and the shed. I.R. testified that on two occasions in the shed, the defendant forced her hand on his penis over his pants and told her to squeeze. I.R. testified that she felt a "hard feeling." She testified that a camera was in the shed, but she did not know if it was on or off. I.R. testified that the defendant put his hands around her ankles, put her legs in the air, and put his face in between her legs.

I.R. testified that after this incident, she started writing letters to her deceased father in her journal, but she did not tell her mother what the defendant had done because she was scared. The defendant had threatened to kill her mother if I.R. reported what the defendant did to her. I.R. testified that the defendant tried to take her journal from her, and the defendant called J.R., who took the journal and placed it on top of her mother's closet. The defendant told I.R.'s mother that punishment was appropriate for writing that she hated the defendant. I.R. told her mother that she hated the defendant because he was touching her inappropriately. I.R. identified where someone ripped the pages from her journal; she denied ripping out these pages.

I.R. testified that after this incident, she spoke to Detective Hollis, the CAC, and people at Children's Hospital and reported what the defendant did to her. She and her mother eventually moved out of state.

After the court accepted Dr. Paige Culotta as an expert in the field of child abuse pediatrics, she testified that she first evaluated I.R. on May 5, 2021. I.R. told Dr. Culotta what the defendant did to her. However, I.R. became very upset during the physical exam of her genitalia, and she stopped the exam. On June 2, 2021,

I.R. returned for the physical exam. Dr. Culotta testified that there were no physical signs of trauma from I.R.'s physical exam, explaining that it is uncommon to see any physical signs of sexual abuse in cases of delayed disclosure. Dr. Culotta testified that there were no signs of coaching I.R. on reporting the abuse.

Darrin Cotton, the defendant's cousin, testified that he lived with the defendant and Kendra in 2017 and 2019 after multiple back surgeries. He also stayed at the house to help Kendra when needed. He testified that he never saw the defendant conduct himself inappropriately with I.R.

The defendant testified that he was a tugboat captain and went by the name "Jack." He married Kendra on June 8, 2016. He and Kendra lived with her four children and his son, Grayson. His cousin, Darrin, lived with them after Darrin had back surgery in 2017 and 2019. Darrin was at their house when the defendant was working and when the defendant was home. The defendant installed surveillance cameras on the interior and exterior of the house to help monitor Grayson.

The defendant testified that he disciplined the children more strictly than Kendra. This discipline was not well received by the children because Kendra's ex-husband was abusive.

In December of 2018, he received a call from Kendra stating that I.R. had accused him of touching her. The defendant testified that they worked through this incident; however, the police got involved in 2019 after V.R. reported the abuse to a counselor at her school. DCFS Child Protective Services employee Mr. Stillwell interviewed the defendant; the defendant gave a statement to JPSO. The defendant explained that he lost his job because of this incident, but no one arrested him. The defendant wanted to move to an apartment since living with V.R. was unacceptable; however, Kendra decided that V.R. should live at her uncle's house.

Around Thanksgiving of 2020, he forgave V.R., and she moved back into the home.

The defendant testified that in 2021, he saw I.R. writing in her journal when she was supposed to be doing schoolwork. I.R. heard the defendant approaching and pulled up her school material on the computer. He asked J.R. to get the journal and said he was going to the bathroom, then he would check I.R.'s work. The defendant testified that when he came out of the bathroom, Kendra asked for the journal. The defendant denied knowing about or tearing pages from the journal. Kendra told him that I.R. reported that the defendant was touching her. He requested that they speak to the detectives, but Kendra did not want to go to the police. After these allegations, he stayed with his mother.

The defendant denied ever inappropriately touching I.R., making I.R. touch his penis, and insinuating anything sexual to her. He stated that many people, such as his cousin and mother, were always in his home.[5] Although the defendant indicated he was never alone in his house with I.R., he could not say he had never been alone with her.

## ASSIGNMENT OF ERROR

Joachim Cotton married K.R., a woman who had four children from a previous marriage. Cotton willingly accepted each child as his very own and he financially and emotionally cared for his family. He was not well liked because he assigned each child chores to teach them character and the value of hard work. He was accused of inappropriately, touching, kissing, and fondling I.R., his wife's twelve-year old daughter. V.R., his wife's oldest daughter, reported the allegations to the police and to the Department of Children and Family Services. The circumstantial evidence presented at trial did not convince the jury to convict. It was the district court's *Allen* (dynamite) charge that pressured the jury to return a unanimous verdict, but only for a lesser included offense. Cotton requests that his conviction and sentence be reversed due to the district court's abuse of discretion.

---

[5] Joan Cotton, the defendant's mother, testified that Grayson and I.R. came to her house in Lafitte often and spent the night. She spent time at her son's home but was not there all the time. She never suspected the defendant was acting inappropriately with I.R. and never saw any inappropriate touching.

Angelique Cannatella, the defendant's sister, testified that she would see the defendant and the family often, and spent time at her brother's house. She never saw the defendant act inappropriately with I.R.

## LAW AND DISCUSSION

On appeal, the defendant argues that the jury could not have reached a plausible verdict based on the evidence presented at trial. He claims the jury returned a unanimous verdict after the district court intervened in the deliberation process. The defendant contends that the jury determined that the evidence presented could not prove that the defendant committed either offense and informed the court that it could not reach a verdict. The defendant argues that after the district court instructed the jury to return to the deliberation room to reconsider its decision, it reached a consensus on a lesser included offense on count one. The defendant avers that the trial court erred in denying his motion for post-verdict judgment of acquittal. The defendant concludes that his conviction and sentence, along with his habitual offender stipulation and sentence, should be vacated and set aside due to the trial court pressuring the jury to return a guilty verdict through an *Allen*[6] charge despite the State's failure to present evidence of guilt beyond a reasonable doubt.

The State responds that the defendant did not object to the charge and instead agreed to the charge given by the trial judge. The State contends the defense did not preserve the issue for appellate review. The State submits that even if the issue was preserved for review, it warrants no relief as the elements of an impermissible *Allen* charge were not present in the charge given to the jury. The State argues that the trial judge did not tell the jurors holding the minority view to rethink their positions in light of the majority's stance to reach a verdict. The State submits that the trial judge's instruction did not imply that she would not accept a mistrial, as evidenced by the fact that she told the jurors the court would

---

[6] *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

accept it if they could not reach a verdict and that the court accepted the mistrial as to count two.

The minute entry indicates that on March 2, 2023, at 7:00 p.m., the jurors retired to deliberate, and at 10:22 p.m., the jurors declared that they could not reach a verdict. The jurors sent the court a note stating: "After considerable and active discussion, this jury was not able to reach a unanimous verdict on any of the charges presented." The trial judge asked the State and defense counsel if the parties wanted a "dynamite" charge. The defense counsel replied, "No." The prosecutor told the court it would request a dynamite charge, and defense counsel stated, "No. An *Allen* charge, no." The court held a sidebar conference off the record. The trial judge then indicated it had "two versions" of the "*Allen* charge, dynamite charge." The court held another sidebar conference off the record. The trial judge then read the "informal" version to the State and defense counsel. After two sidebar conferences off the record, the State said it was okay with the "informal" version of the dynamite charge. Defense counsel stated, "Defense agrees." The court held a brief sidebar conference, the jury returned to the courtroom, and the trial judge said:

> THE COURT: Okay, Ladies and Gentlemen of the jury, I received a note saying, "After considerable and active discussion, this jury was not able to reach a unanimous verdict on any of the charges presented." Well, at least you understand that you have two different charges that you have to vote on. That's number one; so how is it that you're not confused about that? And twelve of twelve have to agree on each charge. "This is a time when a lot of patience and understanding is required. Please don't get mad at each other. Nobody else is mad at you; so why should you get mad at each other? Just be as patient with each other as you possibly can. Remember that this is a very serious matter. We want to abide by your decision, whatever it is. If you cannot decide this case the next time you come back, I will accept that. But we would all be very grateful to you if you can reach a

decision; so we're asking you to, please, try once more."

So with that said, Ladies and Gentlemen of the Jury, do you think you may be able to deliberate a little while longer and reach a decision?

(Jurors shake heads.)

THE COURT:       I see some head saying no.  Are you willing to try --

JUROR:              I'm willing to try.

THE COURT       --one more time?  Thank you.  All rise for the jury.

DEPUTY:            All rise for the jury.

THE COURT:       Do you have any other questions for us?  Are you confused about anything while you're here?  It's a verdict on each count.  All twelve have to agree.

JUROR:              We know.

THE COURT:       You understand?

JUROR:              Yeah.

THE COURT:       Okay.  And if you cannot reach a verdict, knock on the door; and we'll accept that.  But if you'll try one more time, please. Thank you.

(Whereupon, the jury exited the courtroom to resume deliberations at this time.)

The jury later sent a note asking, "How is it possible to get clarification with respect to whether there was a working camera in the room that [I.R.] and Grayson shared?"  The trial judge, the State, and the defense counsel discussed that the "evidence was in" and that it could not reopen the case.

The jury returned to the courtroom, and the trial judge stated:

There's a question: "How is it possible to get clarification with respect to whether there was a working camera in the room that [I.R.] and Grayson shared?"  My response, Ladies and Gentlemen, is that all the evidence is in.  The case cannot be reopened; therefore, we cannot answer your question.

The jury then exited the courtroom to resume deliberations.  At 11:54 p.m., the jury informed the court: "The jury has reached a verdict on the charge of

23-KA-492                                11

indecent behavior with a juvenile under thirteen; however, given the firm convictions of the jury members, there's no prospect for unanimous votes on the charge of sexual battery of a child under thirteen. How shall we proceed?" After discussion with the parties, the trial judge stated it would accept a verdict on the agreed count, and they would have to try the other count another day. The jury found the defendant guilty of attempted indecent behavior with a juvenile under thirteen on count one. The court declared a mistrial on count two.

The record indicates that the defendant failed to preserve his claim that the trial judge erred by giving the jury a prohibited *Allen* charge. The record shows that the defense counsel agreed to the charge given.

> C.Cr.P. art. 841 provides in pertinent part:
>
> A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

To seek an appellate review of an alleged trial court error, a party must make a contemporaneous objection and state the grounds for that objection. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 838, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. The record of the proceedings surrounding the trial judge's proposed informal instruction to the jury does not show that defense counsel objected to the instruction. The defense counsel agreed to the trial judge's instruction. For this reason, the alleged error was not properly preserved for review, as the defendant failed to object to the instruction and consented to it. *See State v. Rivera*, 22-365 (La. App. 3 Cir. 11/9/22), 2022 WL 16831969, *writ denied*, 22-1707 (La. 3/14/23), 357 So.3d 825;[7] La. C.Cr.P. art. 801(C).

---

[7] In *Rivera*, the defendant alleged that the trial court erred by refusing to answer a jury question regarding the possibility of a hung jury. In addition to finding that the court's instruction for the jury to continue deliberating did not rise to the level of an impermissible *Allen* charge, the third circuit found that the defendant's assignment was not preserved for appellate review, as he not only failed to

The defendant filed a motion for post-verdict judgment of acquittal based on the alleged *Allen* charge. However, given that the defense counsel agreed to the charge, this was insufficient to preserve the defendant's argument on appeal. *See State v. Williams*, 22-594 (La. App. 4 Cir. 5/8/23), 367 So.3d 785, 795, where the fourth circuit found that the record did not contain an objection from defense counsel as to the trial judge's alleged *Allen* charge, although defense counsel first raised it in a motion for new trial. The court found that the defense counsel did not adequately preserve the assignment of error for review; however, it discussed the merits of the assignment of error and ultimately found that the instruction was not an *Allen* charge.

Further, even if adequately preserved for appellate review, we find that this assignment of error is without merit for the following reasons.

The *Allen* charge stems from the United State Supreme Court's decision in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). *State v. Caston*, 561 So.2d 941, 942 (La. App. 2 Cir. 1990). In *Allen*, the court approved a charge to break a jury deadlock and achieve jury unanimity. *Caston*, *supra*. The main focus of the original *Allen* charge was that the jury minority, regardless of whether they were for conviction or acquittal, should reconsider the reasonableness of their opinion because a majority of the jury did not share it. *Id.*

The Louisiana Supreme Court has banned the use of the *Allen* charge and subsequent modifications. *State v. Collor*, 99-175 (La. App. 4 Cir. 4/26/00), 762 So.2d 96, 104, *writ denied*, 00-1487 (La. 3/9/01), 786 So.2d 116 (citing *State v. Nicholson*, 315 So.2d 639 (La. 1975)). While the Supreme Court recognized the authority of a trial court to give further instructions to a jury unable to agree upon a

---

contemporaneously object to the trial court's "supplemental instructions," but acquiesced to the supplemental instructions, citing to La. C.Cr.P. art. 801(C) which states in part " A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." *Rivera*, 2022 WL 16831969, at *2.

verdict, it found the *Allen* charge problematic for two reasons. First, the charge emphasized that the jury had a duty to reach a verdict, implying that the trial judge would not accept a mistrial. Second, when coupling the duty to reach a verdict with an admonition by the trial judge that those in the minority should rethink their position, there exists an almost overwhelming pressure to conform to the majority's view. *Id.* (citing *State v. Campbell*, 606 So.2d 38, 40 (La. App. 4 Cir. 1992)). Therefore, if a trial judge gives an *Allen* charge or any "coercive modification" of the same, the trial court will have committed reversible error. *Collor*, *supra* (citing *Nicholson*, *supra*).

A judge is not required to declare a mistrial at the initial sign of trouble. *State v. Anders*, 06-589 (La. App. 3 Cir. 9/27/06), 941 So.2d 93, 101 (citing *State v. Lowenfield*, 495 So.2d 1245 (La. 1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986)). It is within the trial court's discretion to urge jurors to come to an agreement. *Anders*, *supra* (quoting *State v. Governor*, 331 So.2d 443 (La. 1976)).

In *State v. Lavigne*, 22-282 (La. App. 5 Cir. 5/24/23), 365 So.3d 919, 951, *writ not considered*, 23-1119 (La. 10/10/23), 370 So.3d 1086, *reconsideration denied*, 23-1119 (La. 1/10/24), 375 So.3d 967, this Court found that the trial court's charge regarding further deliberations did not include the elements that the United States Supreme Court found problematic in *Allen*. In *Lavigne*, the jury sent a note to the trial judge during deliberations stating it could not agree to a verdict on count one but had a verdict for count three. After discussions with the State and defense counsel, the parties agreed to the "informal Dynamite charge." The trial judge provided the following to the jurors:

> Okay. Ladies and Gentlemen, the question is, "Cannot agree on verdict for Count 1. We do have a verdict for Count 3." I'm going to please, please, please ask you Ladies and Gentlemen to be as patient with each other as you possibly can. Remember that this is a very serious matter. We're going to abide by your decision, whatever it is.

> If you cannot decide this case, the next time you come back, I will accept that, but we would all be very grateful to you if you can continue to deliberate and we're asking you to please try once more. Okay.

*Id.* at 948-49.

This Court found that the instruction did not imply that the trial judge would not accept a mistrial, stating, "It is well-settled that utilizing the phrase 'I am going to urge you to come to an agreement' is not palpable abuse." *Id.* at 951 (citing *Governor*, 331 So.2d at 453).[8] This Court also found that the trial court's instruction did not attempt to coerce the jury members holding the minority viewpoint to accept the majority position. It also found that the trial court emphasized the importance of patience and reminded the jury of the seriousness of the matter. This Court found that it was unlikely that the jurors interpreted the judge's request as an implication that the court would not accept a mistrial. *Id.* at 952 (citing *Eugene*, 866 So.2d at 991; *State v. Wilson*, 01-625 (La. App. 3 Cir. 12/28/01), 806 So.2d 854, 858, *writ denied*, 02-323 (La. 9/13/02), 827 So.2d 1121 (where the court held that the charge given by the trial court did not rise to the level of an *Allen* charge or a modified *Allen* charge when the trial court did not imply to the jurors that it would not accept a mistrial or attempt to coerce the jury members holding the minority viewpoint to accept the majority position)).

In this case, the trial court's instruction, which is nearly identical to the charge given in *Lavigne, supra,* did not constitute an improper *Allen* charge. In the instant matter, the jury informed the court that it was unable to reach a unanimous verdict on either charge. The trial judge discussed giving an informal charge with the State and defense counsel, and both parties agreed. The instruction included

---

[8] This Court also cited to *State v. Dudoussat*, 47 La. Ann. 977, 17 So. 685 (1895) which stated "It is safe to state as a settled proposition that when the Court is informed by a jury that they cannot agree, it is not error for the Court to impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation; for the question of the discharge of the jury because of inability to agree on a verdict is within the sound discretion of the trial judge, and the exercise of that discretion will not be set aside in the absence of palpable abuse." *Lavigne*, 365 So.3d at 951-52.

language that patience and understanding were necessary for the deliberation process and to remember that this was a serious matter. The court also stated that it would abide by the jury's decision, whatever it may be. The trial judge also noted in the instruction that if the jury could not decide the case the next time they came back, the trial judge would accept it; however, she would be grateful if they reached a decision and asked the jury to try once more. After she found that the jury understood the instruction, the trial judge reiterated that if the jury could not reach a verdict, the court would accept it.

As in this Court's previous decision in *Lavigne*, *supra*, we find that the instruction in the instant matter did not imply that the trial judge would not accept a mistrial, as the instruction and a further statement by the judge stated she would accept if the jury came back because it could not reach a verdict. Additionally, the language of the instruction did not attempt to coerce the jurors who held the minority viewpoint to accept the majority position. The trial court emphasized that the jurors should be patient with each other and not mad at each other and stressed the seriousness of the matter. The trial judge stated that the court would accept a mistrial if the jurors could not agree on the verdict.[9] Thus, the trial judge's instruction to the jury did not meet the elements of an impermissible *Allen* charge.

Additionally, having found that the trial court did not issue an impermissible *Allen* charge, the trial court did not abuse its discretion in denying the defendant's motion for post-verdict judgment of acquittal.

---

[9] *See also Eugene*, *supra*. In *Eugene*, the jury informed the court that it was unable to reach a verdict and sought the court's guidance on how to proceed. *Eugene*, 866 So.2d at 991. The court reiterated some language from its jury charges that the jury "must discuss the evidence fully with an objective to reaching a verdict." The trial judge asked the jurors to spend a little more time so that it could obtain the result of a just verdict. The trial judge stated only after that point if the jurors remained deadlocked, they could inform the court. The trial judge asked the jurors to "try to seek a fresh viewpoint, while not surrendering your own." *Id.* at 990. This Court found that it was unlikely that the jurors interpreted the judge's request that it spend "a little more time deliberating" as an implication that it would not accept a mistrial. This Court also pointed out the trial judge's language as to not surrender their own viewpoint. *Id.* This Court found that the trial judge's charge regarding further deliberations did not touch upon the elements that the United States Supreme Court found problematic in *Allen*. *Id.*

**ERROR PATENT DISCUSSION**

We reviewed the record for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

First, the trial court failed to observe the twenty-hour delay between denying the defendant's post-trial motions and imposing the defendant's original sentence. However, when sentenced as a habitual offender, the court set aside the original sentence. Therefore, failing to observe the twenty-four-hour delay is harmless, and no corrective action is needed. *State v. McCloud,* 04-1112 (La. App. 5 Cir. 3/29/05), 901 So.2d 498, 505, *writ denied,* 05-1450 (La. 1/13/06), 920 So.2d 235).

Second, the defendant's enhanced sentence is illegally lenient. The defendant shall serve at least two years of the sentence without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:81(H)(2). After the defendant stipulated to being a third-felony offender, the trial court imposed an enhanced sentence of twelve years imprisonment without the benefit of probation or suspension of sentence. However, the trial court did not restrict parole. La. R.S. 15:529.1(G) requires that all multiple offender sentences are without the benefit of probation or suspension of sentence, but it does not restrict parole. When a defendant is sentenced as a multiple offender, it is the penalty provision for the underlying offense that imposes a parole restriction. *State v. Bruins*, 407 So.2d 685, 687 (La. 1981); *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280. For this reason, we vacate the defendant's sentence, and remand this matter to the trial court for resentencing to impose the defendant's enhanced sentence under the provisions of the underlying statute, La. R.S. 14:81(H)(2).

Next, the Uniform Commitment Order (UCO) provides that the defendant was charged with attempted indecent behavior with a juvenile under the age of thirteen on count one. However, the record reflects that the defendant was charged

with indecent behavior of a juvenile under the age of thirteen and found guilty of the lesser offense of attempted indecent behavior of a juvenile under the age of thirteen. On remand, to maintain the record's accuracy and completeness, the trial court is ordered to correct the UCO. We order the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities and the Department of Corrections' legal department. *See State v. Wallace*, 22-597 (La. App. 5 Cir. 8/9/23), 370 So.3d 128, 139-40, *writ not considered*, 23-1366 (La. 3/19/24) (where this Court remanded the case for correction of the UCO which incorrectly stated the defendant was charged with manslaughter when charged with second-degree murder and found guilty of the lesser offense of manslaughter).

Finally, the trial court erred in setting the ability to pay the fines, fees, and cost hearing upon the defendant's release from the DOC. On March 29, 2023, the trial court imposed fines and fees when imposing the defendant's enhanced sentence. The "Felony Schedule of Fines, Fees, and Sentencing Provisions & Probation Requirements" form details the amount of the court fines and fees imposed. The trial judge signed this form, which contains a handwritten note from the trial judge stating, "Ability to pay hearing will be set upon release from DOC."

La. C.Cr.P. art. 875.1 requires the court to conduct a hearing to determine whether payment of any fine, fee, cost, restitution, or monetary obligation would cause financial hardship to the defendant or his dependents. La. C.Cr.P. art. 875.1(C) discussed the determination of substantial financial hardship as follows:

> (1) Notwithstanding any provision of law to the contrary, **prior to ordering the imposition or enforcement of any financial obligations as defined by this Article**, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. **The court may delay the hearing to determine**

**substantial financial hardship for a period not to exceed ninety days**, in order to permit either party to submit relevant evidence.

(2) The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.

(emphasis added). The statute requires a hearing regarding the defendant's ability to pay before imposing any financial obligation. While a delay is permissible, it cannot be more than ninety days. In this case, the trial court delayed the hearing until the defendant's release from the Department of Corrections.

In *State v. Smith*, 23-263 (La. App. 5 Cir. 12/27/23), 379 So.3d 206, 214-15, this Court found that the trial court's order for a financial hardship hearing to be held for payment of costs, fines, and fees one year after defendant's release from the Department of Corrections was a patent error. This Court stated that the trial court's order delaying the hearing exceeded the ninety days allowed by La. C.Cr.P. art. 875.1 and pointed out that there was no waiver of the judicial determination of financial hardship. This Court vacated the financial obligations imposed on the defendant and remanded the case for compliance with La. C.Cr.P. art. 875.1. *Id.* at 215.

Accordingly, we vacate the financial obligations imposed on the defendant and, on remand for resentencing, order the trial court to comply with La. C.Cr.P. art. 875.1.

## CONCLUSION

For the preceding reasons, we affirm the defendant's conviction. We vacate the defendant's sentence and remand this matter to the trial court for resentencing as instructed above.

<u>**CONVICTION AFFIRMED;**</u>
<u>**REMANDED FOR RESENTENCING**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 31, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-492

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

**MAILED**
PRENTICE L. WHITE (APPELLANT)        HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                       (APPELLEE)
LOUISIANA APPELLATE PROJECT           DISTRICT ATTORNEY
16731 CICERO AVENUE                   TWENTY-FOURTH JUDICIAL DISTRICT
BATON ROUGE, LA 70816                 200 DERBIGNY STREET
                                      GRETNA, LA 70053